UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TIG INSURANCE COMPANY,<br>AS SUCCESSOR TO INTERNATIONAL<br>SURPLUS LINES INSURANCE COMPANY,<br>NORTH RIVER INSURANCE COMPANY,<br>U.S. FIRE INSURANCE COMPANY<br><br>VERSUS<br><br>EAGLE, INC. AND<br>THE GRAY INSURANCE COMPANY | CIVIL ACTION<br><br><br><br><br><br>NO.  05-0179<br><br><br>SECTION "N" (2) |

## ORDER AND REASONS

Presently before the Court are Eagle's Motion for Partial Summary Judgment (Rec. Doc. No. 65) and Gray's Motion for Summary Judgment (Rec. Doc. No. 64). For the reasons stated herein, **IT IS ORDERED** that Eagle's motion is **GRANTED** and that Gray's motion is **DENIED IN PART** and **GRANTED IN PART**.

## BACKGROUND

Eagle, Inc. ("Eagle") has been selling and installing insulation since the 1920's. Numerous claims have been made, and lawsuits filed, against Eagle by persons alleging bodily injury from exposure to asbestos in products purportedly sold and/or installed by Eagle. TIG Insurance Company ("TIG") and The Gray Insurance Company ("Gray") provide "aggregate excess" insurance coverage to Eagle for each "accident" resulting in these claims. The Gray policy is implicated after the aggregate excess limit of the underlying TIG policy is exhausted.

In dispute here is whether Gray is obligated to pay "up front" for claims asserted

against Eagle, and for Eagle's defense costs (attorney's fees and expenses),[1] or, instead, whether Gray must only "pay back" Eagle for any of these amounts *after* Eagle provides proof that it actually has already paid them. Gray argues that, because Eagle allegedly has not submitted satisfactory proof of payment, Gray presently owes Eagle nothing. For the same reasons, Gray contends that it cannot be liable under La. R.S. 22:658 and 22:1220. Accordingly, Gray seeks dismissal of all claims asserted against it by Eagle. Eagle, on the other hand, seeks a partial summary judgment declaration that Gray is obligated to pay, on an "up front" basis, a total of up to $35,000 per accident for any indemnity costs owed to the claimant *and* for the costs of Eagle's defense.

## **LAW AND ANALYSIS**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the

---

[1] The parties and the Court also refer to such payment as payment "in the first instance," or on a "liability," or "first dollar," basis.

nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001).  Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted).  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the

nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**A.     Payment of Costs of Indemnity and Defense**

As an initial matter, the Court has held that the limits of the underlying TIG policy (or policies) have been exhausted.[2] The issue now before the Court is the nature and scope of Gray's obligations, as Eagle's excess insurer, for the first $35,000 of each asbestos exposure claim asserted against Eagle and the associated defense costs.

As the parties have indicated in their briefs, the Louisiana Supreme Court's decision in *Quinlan v. Liberty Bank and Trust Co.*, 575 So. 2d 336 (La. 1990), is instructive. There, the Court explained, in pertinent part:

> INDEMNITY AND LIABILITY INSURANCE DISTINGUISHED
>
> In legal parlance "liability insurance" is used in both a broad and a narrow sense. When the term is used in a broad sense it includes both contracts of indemnity against loss and contracts of insurance against liability. *See* Vance, Insurance § 196 (3rd ed. 1951). But when the

---

[2]     *See* July 12, 2006 Minute Entry and November 21, 2006 Order (Rec. Doc Nos. 60 and 98).

term is used in a narrow sense it refers only to contracts of insurance against liability as opposed to contracts of indemnity against loss. *See Meloy v. Conoco, Inc.,* 504 So.2d 833 (La.1987).

Under a liability policy (in the narrow sense) the insurer is required to make payment although the insured has not yet suffered any loss, for by definition the purpose of the liability policy is to shield the insured from being required to make any payment on the claim for which he is liable. Couch on Insurance 2d (Rev. ed.) § 44:4. Under an indemnity contract, by way of contrast, the insurer is only required to indemnify or make whole the insured after he has sustained actual loss, meaning after the insured has paid or been compelled to make a payment, his action against the insurer then being to recover the amount of such loss by way of indemnity. *Id.*; *See Meloy v. Conoco, Inc.,* 504 So.2d at 839.

The general distinction between the two kinds of insurance is that if the policy is one against liability, the coverage thereunder attaches when the liability attaches, regardless of actual loss at that time; but if the policy is one of indemnity only, an action against the insurer does not lie until an actual loss in the discharge of the liability is sustained by the insured. 43 Am.Jur.2d Insurance § 712 (1964); *see also Meloy v. Conoco, Inc., supra; Waugh v. American Casualty Co.,* 190 Kan. 725, 378 P.2d 170 (1963); *Gorman v. St. Paul Fire & Marine Ins. Co.,* 210 Md. 1, 121 A.2d 812 (1956); *Kinnan v. Charles B. Hurst Co.,* 317 Ill. 251, 148 N.E. 12 (1925); *McBride v. Aetna Life Ins. Co.,* 126 Ark. 528, 191 S.W. 5 (1917); *Goodman v. Georgia Life Ins. Co.,* 189 Ala. 130, 66 So. 649 (1914); *Frye v. Bath Gas & Electric Co.,* 97 Me. 241, 54 A. 395 (1903); *Fenton v. Fidelity & Casualty Co.,* 36 Or. 283, 56 P. 1096 (1899); *American Employers' Liability Ins. Co. v. Fordyce,* 62 Ark. 562, 36 S.W. 1051 (1896); *Anoka Lumber Co. v. Fidelity & Casualty Co.,* 63 Minn. 286, 65 N.W. 353 (1895); Couch, supra § 44:4; Appleman, Insurance Law and Practice (Buckley ed.) § 4261.

In general, the class into which a particular policy falls depends upon the intention of the parties to the contract, as evinced by the phraseology of the agreement in such respect in the policy. 43 Am. Jur. 2d § 712; *see also Michel v. American Fire & Casualty Co.,* 82 F.2d 583 (5th Cir.1936); *Slavens v. Standard Accident Ins. Co.,* 27 F.2d 859 (9th Cir.1928); *DaCosta v. General Guaranty Insurance Co. of Florida,* 226 So.2d 104 (Fla.1969); Appleman, supra § 4261; 1 R. Long, Law of Liability Insurance § 1.06. If the policy is ambiguous, the ambiguity should be resolved by interpretation that

> the policy is one against liability rather than one of indemnity against loss actually paid by the insured. 43 Am. Jur. 2d § 712; *see also Michel v. American Fire & Casualty Co., supra; Lake v. Fidelity & Deposit Co. of Maryland,* 430 F.2d 1251 (5th Cir.1970); *DaCosta v. General Guaranty Insurance Co. of Florida, supra; West v. MacMillan,* 301 Pa. 344, 152 A. 104 (1926); Appleman, *supra* § 4261.

*Quinlan*, 575 So. 2d at 348-49.

Applying these principles to the language of the Gray policy in question, Gray Policy GA-10111, the Court finds that an ambiguity exists with respect to whether that policy was intended to serve as a liability policy rather than one of only indemnity. Thus, as explained in *Quinlan*, the Court must resolve the ambiguity in the insured's favor by interpreting the policy as one against liability, or, in other words, as one providing first dollar coverage. For essentially the same reasons, the Court finds that Gray must bear first dollar responsibility for Eagle's defense costs. Accordingly, as is further explained below, the Court grants Eagle's motion for partial summary judgment, and denies Gray's motion for summary judgment regarding these issues.[3]

In urging that the policy must be interpreted, as a matter of law, as one of indemnity, Gray points to the language of its policy stating:

### INSURING AGREEMENTS

> The Gray Insurance Company (hereinafter called "The Company") agrees with the insured . . ., subject to the Limits of Liability, Exclusions, Condition and other terms of this policy:

### COVERAGE

> To pay promptly when due aggregate reimbursements to the insured that are excess of the aggregate limit of the underlying policies

---

[3] As Eagle's motion for partial summary judgment seeks only declaratory relief, the Court makes no quantum determinations herein. *See* Eagle Inc.'s Motion for Partial Summary Judgment (Rec. Doc. No. 65) at 2.

6

scheduled in the Declarations.[4]

\* \* \*

Gray argues that the word "reimbursements" can only be reasonably construed to mean that its sole obligation is to pay back Eagle for indemnity costs that Eagle actually has paid to a claimant. Gray further argues that its policy says nothing about a duty to defend Eagle in connection with the asbestos exposure claims asserted against it.

If the language cited by Gray were the only policy provision pertinent to this dispute, the Court would agree with Gray's position. Other provisions of the Gray policy, however, when considered together with the underlying TIG policy, as the Court finds they must be, create ambiguity regarding the intended nature and scope of Gray's payment obligations under its policy.[5]

Specifically, the Court first notes that the underlying TIG policy, XSI-9538, provides, in part:

> COMPREHENSIVE GENERAL LIABILITY INSURANCE COVERAGE PART
>
> COVERAGE A – BODILY INJURY LIABILITY
> COVERAGE B – PROPERTY DAMAGE LIABILITY
>
> The Company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of
>
> Coverage A. **bodily injury** or
> Coverage B. **property damage**

---

[4] *See* Gray Policy GA-10111, Exh. B to Eagle's Memorandum in Support of Motion for Partial Summary Judgment (Rec. Doc. No. 65-2) ("Eagle's Mem.") at GR-1861.

[5] Gray also urges the Court to find the decision of the Louisiana Fifth Circuit Court of Appeal in *Grefer v. Travelers Ins. Co.*, 04-1428 (La. App. 5 Cir. 12/16/05), 919 So. 2d 758, determinative of this dispute. Given the lack of clarity regarding the specific policy provisions considered by the *Grefer* court, and the significance of the testimony by Mr. Floyd Sibley of Gray, the Court does not find that decision controlling here.

>to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.[6]

Referencing this language and other provisions in the TIG policy, both Eagle and Gray, which have been given multiple opportunities for briefing, unequivocally agree that the underlying TIG policy is a liability policy that includes a duty of defense.[7]  This is important because the Gray policy, which provides excess coverage after the TIG policy limits are exhausted, is not intended to stand on its own.  Rather, as a starting point, the quoted TIG coverage and defense language must be considered in conjunction with the Gray policy's "Insuring Agreements" and "Coverage" provisions set forth above, as well as the Gray policy's statement that it, "except as to limits, shall be subject to all the Exclusions and Conditions of the underlying policies."[8]

Further, regarding "up front" payment, Condition (7) of the underlying TIG liability policy refers to "reimburse[ment]" of the insured, but also states that, "when the Assured is legally obligated to pay or by final judgment has been adjudged to pay any person or person as damages,

---

[6] *See* TIG Policy XSI-9538, Exh. A to Eagle's Mem., at PL00441 (emphasis in original).  Gray maintains that TIG Policy XSI-9538 is the relevant underlying TIG policy.  *See* Gray's Memorandum in Opposition to Eagle's Motion for Summary Judgment (Rec. Doc. No. 701-1) ("Gray's Opp.") at 3, n.2.  For purposes of these motions, the Court has assumed this to be correct.

[7] Gray and Eagle have addressed this issue in their briefs regarding TIG's Motion for Summary Judgment (Rec. Doc. No. 51), the briefs initially submitted by them in connection with these cross motions, and in special supplemental briefing ordered by the Court.  *See* Rec. Doc. Nos. 55, 64, 65, 69, 70, 76, 82, 83, 100, 101 and 102.

[8] *See* Gray Policy GA-10111, at GR-1861, 1863.

the company shall pay on behalf of the Assured . . . ."[9]  Significantly, Condition (7) is adopted by the Gray policy.[10]  The Gray policy likewise contains certain provisions relative to claims handling and settlement that suggest insurer conduct consistent with "up front" payment by Gray.[11]

With respect to defense costs, the Court particularly notes the very specific "duty to defend" language found in the TIG Policy,[12] and the absence of an exclusion for defense costs in the Gray excess policy.  In addition, Condition (7) of the TIG policy, which again is adopted by the Gray policy,[13] in turn incorporates the "Limits of Liability (B)" provision of the "Aggregate Wording" attachment to TIG policy XS-5966.[14]  Under Limits of Liability (B), the first $35,000 of

---

[9]  In its entirety, Condition (7) states,

(7) LOSS PAYMENTS:

When it has been determined that the Company is liable under Limits of Liability (B) of this Policy, the Company will thereafter promptly reimburse the Assured, (or, when the Assured is legally obligated to pay or by final judgment has been adjudged to pay any person or person as damages, the Company shall pay on behalf of the Assured) for all sums in excess of the Minimum Loss Fund or Loss Fund (whichever may be the greater) upon receipt of a monthly or quarterly statement from Gray & Company, Inc., showing the amount of the excess paid for such period.

*See* TIG Policy Number XSI-9538, at PL00531.

[10]  *See* Gray Policy GA-10111, at GR-1863.

[11]  *See* Gray Policy GA-10111, at GR-1861-63.

[12]  *See* TIG Policy XSI-9538, at PL00441.

[13]  *See* Gray Policy GA-10111, at GR-1863.

[14]  *See* TIG Policy XSI-9538, at PL00439, 443, and 531;  TIG Policy XS-5966, at PL00643-645.

"ultimate net loss" is paid per accident.[15]  "Ultimate net loss" includes "sums paid in settlement of losses for which the Assured is liable . . . *and* . . . allocated legal fees and expenses . . . ."[16]  Finally, the Gray policy provisions relative to claims handling and settlement, as well as Gray's role in securing witnesses and claim information "for the use of the Attorney," likewise suggest an insurer-provided defense.[17]  This is particularly so  when these Gray policy provisions are considered in connection with the previously cited TIG policy provisions, which include termination of TIG's defense obligation upon exhaustion of its policy limits.[18]

        Construing all of these provisions together, the Court finds that the Gray policy can reasonably be interpreted as agreeing to pay for claims and defense costs to the same extent as did the TIG policy, *unless* precluded by a particular Gray policy "Exclusion" or "Condition."  In other words, stated simply, unless a Gray policy "Exclusion" or "Condition" applies, the policy can reasonably be construed to pick up payment where the TIG policy left off.  As no Gray policy "Exclusion" or "Condition" has been urged here, the interpretation in Eagle's favor holds.[19]

---

[15]    *See* TIG Policy XSI-9538, at PL00439, 443, and 531; TIG Policy XS-5966, at PL00643-645.

[16]    *See* TIG Policy XS-5966, at PL00646  (emphasis added).

[17]    *See* Gray Policy GA-10111, at GR-1861-63.

[18]    *See* Gray Policy GA-10111, at GR-1861-63;  TIG Policy XSI-9538, at PL00441.

[19]    The Court recognizes that, as a practical matter, few insurance policies are easily read or fully understood.  Indeed, many are aptly described as a hodgepodge of form documents, endorsements, schedules, and other attachments that often are difficult to reconcile.  Here, having to construe the TIG and Gray policies together only further complicates these tasks.  In any event, the resulting lack of clarity is appropriately construed against the excess insurer, which has ample opportunity and ability to take appropriate measures in drafting and issuing its policies to avoid such problems.

### B.     Claims Under La. R.S. 22:658 and 22:1220

Gray's motion for summary judgment also seeks relief with respect to Eagle's "bad faith" claims under La. R.S. 22:658 and 22:1220. Having assumed that the Gray policy is a liability policy, Eagle opposes the motion by arguing that Gray is in bad faith for demanding proof of payment when such proof is not required. Eagle further contends that, even if the Gray policy is instead one of indemnity, Gray's motion nonetheless should be denied as to Eagle's bad faith claims.

In support of its latter argument, Eagle reasons that Gray should have paid for $28,773.92 in defense costs, which include attorney's fees, incurred for the week of February 1-8, 2004. According to the affidavit of Eagle's defense counsel, Lawrence Pugh, III, Gray, through Floyd Sibley and attorney Rick Vale, agreed unconditionally, in April 2004, to pay these costs, but subsequently failed to comply with that agreement.[20] In its February 1, 2007 supplemental submission, Gray responds that, because it has recently confirmed that those amounts actually were paid by a liability insurer other than TIG, Eagle's assertion regarding outstanding defense costs is incorrect.[21]

Although far from predicting the ultimate success of the claim for penalties, the Court finds that Gray has not borne its summary judgment burden with regard to the $28,773.92 in defense costs. Gray has not asserted that it never agreed to pay that amount. Further, even if another insurer has paid these costs, it is not clear to the Court that Gray should be excused from paying simply

---

[20]     *See* Affidavit of Lawrence G. Pugh, III at ¶¶ 10-13, and April 13, 2004 Letter from Pugh to Debra Hannon and Floyd Sibley, Exhibits A and A-1 to Eagle, Inc.'s Opposition to the Gray Insurance Company's Motion for Summary Judgment (Rec. Doc. No. 69) ("Eagle's Opp.").

[21]     Gray attaches a January 31, 2007 email to its attorney, Eddie Koehl, from Eagle's defense counsel Lawrence Pugh, III, as Exhibit B to its February 1, 2007 Supplemental Memorandum (Rec. Doc. No. 102).

because another insurer was willing to do so. Finally, the Court notes that it apparently was not until January 2007 – almost three years after Gray's alleged April 2004 agreement to pay – that Gray requested and received confirmation that these costs had been paid by another insurer. Under these circumstances, the Court declines to grant summary judgment in Gray's favor with respect to the reasonableness of its failure to pay for $28,773.92 of Eagle's defense costs for the week of February 1-8, 2004.

Otherwise, as the Court has determined, the interplay of the provisions of the Gray and TIG policies creates ambiguity regarding the nature and scope of Gray's payment obligations. Given that ambiguity, the Court finds that, except for the $28,773.92 of Eagle's defense costs for the week of February 1-8, 2004, no genuine issue of material fact exists with respect to the conduct required under La. R.S. 22:658 and 22:1220, and that Gray is entitled to judgment as a matter of law on these claims. Accordingly, Gray's motion for summary judgment is granted in part and denied in part relative to Eagle's bad faith claims under these statutes.

## **CONCLUSION**

The Court has determined that Gray's excess insurance policy is ambiguous as to whether it is a liability policy, rather an indemnity policy, and as to whether it pays for costs of defense. The Court construes this ambiguity in the insured's favor; therefore, **IT IS ORDERED** that Eagle's motion for partial summary judgment is **GRANTED**. Regarding Eagle's bad faith

claims under La. R.S. 22:658 and 22:1220, the Court finds that the only triable issue is as to $28,773.92 of Eagle's defense costs for the week of February 1-8, 2004.  Thus, **IT IS ORDERED** that Gray's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

New Orleans, Louisiana, this __19th__ day of March 2007.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**